STATE OF VERMONT WASHINGTON COUNTY



ANNETTE MESERVEY and }
ROBERT MESERVEY }
}
} DOCKET NO. 441-8-01 Wncv
Vs. }
}
}
NATIONWIDE MUTUAL INSURANCE }
COMPANY }

## Findings and Conclusions

This matter came before the undersigned on October 31, 2002 for a trial before the court. Neither Assistant Judge was available. Plaintiffs are represented by Richard I. Rubin, Esq. Defendant is represented by Barbara R. Blackman, Esq. The case arises out of a motor vehicle accident. The amount of compensatory damages was the only issue tried.

### FINDINGS OF FACT

Annette and Robert Meservey are named insureds under an automobile liability policy issued to them by Nationwide Mutual Insurance Company. On December 15, 1999, Annette Meservey was driving her 1994 Honda Accord, an insured vehicle under the Nationwide policy, on Route 15 in Wolcott when she was struck from behind by Miranda Maxham, an uninsured motorist. The negligence of Miranda Maxham caused the accident. As required by the policy, Nationwide will pay compensatory damages, including derivative claims which are due to the insured or a relative of the insured.

Annette Meservey is 37 years old and her husband Robert is 36. They have two children, ages 18 and 17. Ms. Meservey played sports in high school, and has been physically active all her life. Her daughter is also an excellent athlete. Over the years Ms. Meservey has played basketball and soccer regularly with her daughter as her daughter's own athletic training has progressed. Ms. Meservey has also engaged in other regular exercise. She kept both a vegetable and flower garden, and was an active housekeeper. She scrubbed the floor on her hands and knees at least once a month. The entire family went snowmobiling together regularly in the winter, including spending at least one full day on the weekend on long distance snowmobile outings, often with friends and family. In the summer they spent considerable time at a family camp on a lake. Ms. Meservey participated actively in swimming, waterskiing, boating, tubing, and other outdoor activities.

After running a home day-care when her children were small, Ms. Meservey began to work at Quality Control Stitching as a stitcher, which she had done for several years before December of 1999. She liked the work because it allowed her to create a variety of different

1

things out of cloth. She also enjoyed going to work with her mother, and she enjoyed her co-workers.

In February of 1999, ten months before the accident at issue in this case, Annette Meservey was in a snowmobile accident in which she suffered a compression fracture of T11-T12. She was hospitalized and pursued follow-up treatment, including physical therapy. She discontinued physical therapy in April of 1999 when she returned to work. After approximately eight months, the fracture had completely healed. Her activity level had returned to normal with a slight exception: occasionally when she did sit-ups, push-ups, or went jogging, she could feel a slight twinge. She could also feel it when the weather was cold and damp. The effect was minor and had no impact on her level of physical activity. By October of 1999, she had resumed her normal level of physical activity.

The accident occurred on December 15, 1999. Ms. Meservey was hit from behind without warning while in her car. The car was totaled as she was hit at a fairly high rate of speed. She sought treatment immediately after the accident, and started physical therapy within a week. She had pain in her right shoulder that interfered with her ability to lift her right arm. She was unable to lift it or hold it out or above her head without pain. After two months, when physical therapy had not resulted in recovery, she consulted Dr. S. Glen Neale for further treatment. He recommended trigger point injections, which she received, but without beneficial effect. When they did not help he then recommended acupuncture and deep massage therapy. Those also did not relieve her painful condition or her ability to use her arm.

She was laid off at Quality Stitching shortly after the accident. She applied for and obtained unemployment benefits. She was out of work after the accident for several weeks, pursuing treatment while she was unemployed. In March of 2000 she was called back to work. She went back and tried to work, but she was not able to hold her arms up, and therefore could not operate the stitcher. She stayed out of work until April 21, 2000 when she began work as a kindergarten teacher's aide. She is able to do that work because it does not require her to lift her right arm. She enjoys it and has continued that work since.

On January 3, 2001, she returned to Dr. Neale for an updated evaluation of her condition. At that time he concluded that she has a permanent injury. She suffers chronic pain in the medial rhomboid muscle and painful trigger points in her shoulder. These affect her ability to move her shoulder and raise her arm away from her body or hold it out or over her head without pain. Carrying weight causes her pain, as does repetitive action. She holds her right arm in a guarded position to prevent arm movements that would cause her pain. Since this condition did not improve over time, despite a variety of attempted treatments, it will remain for the rest of her life.

This has had a significant impact on her daily activity. She can no longer engage in regular athletic activity as she did before. She cannot play soccer or basketball, or go waterskiing or snowmobiling. She cannot do housekeeping tasks as she did before, including vacuuming or

2

absorbed by other family members. The family is no longer able to go snowmobiling as a family, and they have sold their snowmobiles.

Her injury represents a five percent permanent impairment based on the pain and limitations of her shoulder and arm. Nothing about her prior snowmobile accident contributes to this particular impairment.

Two years after the accident, in December of 2001, the Meserveys' oldest child turned 18. He left home under circumstances somewhat distressing to Ms. Meservey. She felt down and consulted a mental health professional, who prescribed medication. Since that time the effects of her son's leaving home have lifted somewhat. Her depression is resolving. Her physical condition resulting from the car accident remains unchanged. She is occasionally awakened at night by pain, and periodically needs to stop what she is doing and rest. She will always have to guard against lifting her arm in order to avoid painful consequences.

Robert Meservey has experienced direct effects from her injury, which has impacted their relationship. Physical activity has been an important part of their family life during their 20 years of companionship and marriage. In addition to family snowmobiling and waterskiing and other summer camp activities, a yearly family activity and shared experience was splitting, hauling, and stacking firewood. Ms. Meservey can no longer help with this activity directly. Her injury has caused Mr. Meservey to give up snowmobiling and to curtail various other activities. Their conjugal relations were interrupted temporarily.

Annette Meservey's earnings as a kindergarten aide are higher per hour than her earnings at Quality Stitching, but she works fewer hours so that her total earnings are less. She claims lost earnings for the period from the accident until she started working on April 21, 2000 as a teacher's aide. She also claims lost earnings of $5,000 per year representing the difference between her earnings at Quality Stitching and her earnings as a teacher's aide.

The court finds that her choices of work, both at Quality Stitching and as a school aide, are based on her desire to engage in work that she enjoys rather than a goal of working at her maximum earning capacity. Plaintiff has not proved that her earning capacity has been reduced as a result of the accident. While she has physical limitations and a permanent injury, that does not necessarily mean that she does not have the skills and ability to engage in work at a level of compensation equal to what she earned at Quality Stitching. There is insufficient proof on the loss of earnings claim.

As to her claim for lost earnings between December 1999 and April 2000, plaintiff has not proved by a preponderance of the evidence that the reason she was out of work was that she could not physically engage in work. Although she could not operate a stitching machine, it is not clear that she could not do other work, such as she later did when she took on the job of a teacher's aide at kindergarten.

3

The court finds that Annette Meservey has sustained and will sustain the following damages as a result of the automobile accident: medicals expenses of $3,547, plus interest from January 2001 equaling $4,327; pain and suffering; and loss of enjoyment of life due to permanent injury. The court finds that Robert Meservey has suffered and will suffer damages for loss of companionship.

## CONCLUSION

The court awards plaintiff Annette Meservey judgment in the amount of $89,327.00, and awards Robert Meservey judgment on his claim for loss of companionship in the amount of $15,000.00.

Dated at Montpelier this 25th day of November, 2002.

WASHINGTON SUPERIOR COURT

By: _____
Hon. Mary Miles Teachout
Superior Judge, presiding

4